UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Musaid Amir, *et al.*,

      Plaintiffs,

v.                                                           Case No.  21-12457

AmGuard Insurance Company,                    Sean F. Cox
                                                             United States District Court Judge

      Defendant.

_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

The three named Plaintiffs in this putative class action own or rent residential properties in Michigan that were insured by the Defendant insurance company.  Plaintiffs allege that they purchased "flood insurance" from Defendant, that their basements then flooded on June 26, 2021 after a heavy rainfall, but that Defendant refused to pay their insurance claims.  Plaintiffs assert breach of contract claims, based on the insurer's denial of their claims, along with fraud, innocent misrepresentation, silent fraud, and promissory estoppel claims under Michigan law. The matter is currently before the Court on Defendant's Motion for Judgment on the Pleadings. The parties have briefed the issues and the Court heard oral argument on May 26, 2022.  As explained below, the Court grants the motion and dismisses this action.

## BACKGROUND

### A.    Procedural Background

Acting through counsel, Plaintiffs Musaid Amir, Zead Rammouni, and Ali Yahya, filed this putative class action against Defendant AmGuard Insurance Company in state court.

1

Defendant removed the action to this Court based upon diversity jurisdiction.

Plaintiffs' "Class Action Complaint And Jury Demand" states that it is "brought on behalf of current and future insureds who have entered into contractual agreements whereby Defendant represented that it was providing coverage for flood as that term is commonly understood."  (Compl. at ¶ 31.)  It includes the following five causes of action: 1) "Fraud," 2) "Innocent Misrepresentation," 3) "Silent Fraud," 4) "Breach of Express Contract," and 5) "Promissory Estoppel."

Plaintiffs' "Fraud" count alleges that Defendant "acting through its agents made material representations regarding the nature and scope of its insurance coverage."  (Compl. at ¶ 38.)  They allege that "Defendant's material representations were false" and that "[w]hen Defendant made the material representations it knew that they were false, or made it recklessly, without any knowledge of its truth and as a positive assertion."  (*Id*. at ¶¶ 39-40.)  Plaintiffs allege that "Defendant made the material representations with the intention that they should be acted upon by Plaintiffs."  (Compl. at ¶ 41.)  Plaintiffs allege that they "acted in reliance upon Defendant's material representations" and that they "suffered injury as a result of Defendant's material representations."  (*Id*. at ¶¶ 42-33.)

Plaintiffs' "Innocent Misrepresentation" count alleges that "Defendant acting through its agents made material representations in transaction between it and Plaintiffs," that "Defendant's material representations were false," and that "Defendants material representations actually deceived Plaintiffs."  (Compl. at ¶¶ 45-47.)  Plaintiffs allege that they "relied upon Defendant's material representations," and that "Defendant benefitted from its material representations by collecting insurance premiums for coverage that it would never provide thereby selling illusory

insurance coverage to Plaintiffs." (Compl. at ¶¶ 48-49).  Plaintiffs allege that they "suffered injury as a result of Defendant's material representations, and that "Plaintiffs acted in reliance upon Defendant's material representations." (Compl. at ¶¶ 50-51).

Plaintiffs' "Silent Fraud" count alleges that "Defendant failed to disclose a material fact about the subject matter at issue, namely that the purported flood insurance coverage that it sold to Plaintiffs would not provide actual coverage for a flood as that term is commonly understood." (Compl. at ¶ 54).  Plaintiffs allege that "Defendant knew that the purported flood insurance coverage that Defendant sold to Plaintiffs would not provide actual coverage for a flood as that term is commonly understood."  (Compl. at ¶ 55).  They allege that "Defendant's failure to disclose that the purported flood insurance coverage that Defendant sold to Plaintiffs would not provide actual coverage for a flood as that term is commonly understood gave Plaintiffs a false impression that the flood insurance coverage that Defendant sold to Plaintiffs would in fact provide actual coverage for a flood as that term is commonly understood." (Compl. at ¶ 56).  They allege that "[w]hen Defendant failed to disclose that the purported flood insurance coverage that Defendant sold to Plaintiffs would not provide actual coverage for a flood as that term is commonly understood, it knew that the failure to disclose would create a false impression."  (Compl. at ¶ 56).  "When Defendant failed to disclose that the purported flood insurance coverage that Defendant sold to Plaintiffs would not provide actual coverage for a flood as that term is commonly understood, it intended that Plaintiffs rely on the resulting false impression."  (Compl. at ¶ 58).  Plaintiffs allege that they "in fact relied upon the false impression created by Defendant" and that they "suffered damages as a result of relying upon the false impression created by Defendant."  (Compl. at ¶ 59).

3

The "Breach Of Express Contract" count alleges that "[c]ontracts existed between Plaintiffs and Defendant whereby Defendant agreed to provide Plaintiffs coverage for flood damage to their respective properties" and that Defendant breached those contracts "by refusing to provide Plaintiffs coverage for flood damage to their respective properties."  (Compl. at ¶¶ 61-62).  Plaintiffs allege that "Defendant's breach of said contracts resulted in damages to Plaintiffs' respective properties."  (Compl. at ¶ 63).

Plaintiffs' "Promissory Estoppel" count alleges that "Defendant promised to provide Plaintiffs coverage for flood damage to their respective properties," that Defendant "should reasonably have expected to induce action of definite and substantial character by Plaintiffs," and that "Defendant in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided."  (Compl. at ¶¶ 65-67).

The December 2, 2021 Scheduling Order in this case provides, among other things, that any amendments to the pleadings had to be made by January 13, 2022.  Plaintiffs did not seek to file an amended complaint.

On February 3, 2022, Defendant filed a "Motion For Judgment On The Pleadings."

**B.      Standard Of Decision**

The pending motion seeking judgment on the pleadings was brought pursuant to Fed. R. Civ. P. 12(c).   A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6). *Bates v. Green Farms Condo. Ass'n,* 958 F.3d 470, 480 (6th Cir. 2020).

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id.*  When assessing the sufficiency of a plaintiff's claim, this Court must accept the complaint's factual allegations as true.  *Ziegler v. IBP Hog Mkt., Inc*., 249 F.3d 509, 512 (6th Cir. 2001).  "Mere conclusions," however, "are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Iqbal,* 556 U.S. at 664, 129 S.Ct. 1937.  Thus, a plaintiff must provide "more than labels and conclusions," or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do no suffice."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Rule 9(b) of the Federal Rules of Civil Procedure "sets the pleading standard for 'alleging fraud or mistake'" and governs state-law fraud claims in diversity cases.  *Smith v. General Motors, LLC*, 988 F.3d 873, 883 (6th Cir. 2021).  "Rule 9(b) requires parties to 'state with particularity the circumstances constituting fraud or mistake' for fraud claims but permits general allegations about the defendant's knowledge to avoid a 12(b)(6) motion to dismiss.  The adequacy of 9(b) pleadings in the face of a motion to dismiss under 12(b)(6) are analyzed under the *Twombly/Iqbal* framework."  *Id.*  "To satisfy Rule 9(b), 'the plaintiff must allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury.'"  *Smith*, *supra* (citations omitted).

In evaluating the pending motion, this Court may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein. *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, the parties submitted copies of the named Plaintiffs' insurance policies with Defendant. Those exhibits may be considered by this Court, without converting the motion into a summary judgment motion, because they are referred to in the complaint and central to the claims. *Brent v. Wayne Cnty. Dept. of Human Svs.*, 901 F.3d 656, 695 (6th Cir. 2018).

### C.    Factual Background

There are three named Plaintiffs in this action: 1) Musaid Amir; 2) Zead Rammouni; and 3) Ali Yahya. Each of the them obtained a homeowners insurance policy from Defendant and allege that they experienced flooding of their basements on the same date – June 26, 2021.

#### 1.    The Relevant Provisions Of Insurance Policies

The parties have submitted copies of the insurance policies as exhibits to their briefs. All of the policies contain the same relevant provisions.

Each of the insurance policies at issue contain two water exclusions. The first exclusion is set forth under the section titled, "Homeowners 3 - Special Form." (*See* ECF No. 9-2 at PageID.131). That form provides, in pertinent part:

SECTION I – PERILS INSURED AGAINST

A.    Coverage A – Dwelling And Coverage B – Other Structure
    1.    We insure against direct physical loss to property described in Coverages A and B.
    2.    We do not insure, however, for loss:

          a.      Excluded under Section 1 – Exclusions;

. . . .

SECTION I – EXCLUSIONS

A.      We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . . .

      3.     Water
          This means:

          a.     ***Flood, surface water***, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, ***including storm surge;***

. . . .

      This Exclusion A.3 applies regardless of whether any of the above, in A.3.a. through A.3.d., is caused by an act of nature or is otherwise caused.

(*Id*. at PageID. 139-143) (emphasis added).

Each of the homeowners insurance policies at issue also contain a "Limited Water Back-Up and Sump Discharge or OverFlow Coverage" endorsement, which provides limited additional coverage for specific types of claims, but also contains a water exclusion.  That endorsement provides, in pertinent part:

A.      Section I – Property Coverages

     E.   Additional Coverages
     The following coverage is added:

     **Limited Water Back-up And Sump**
     **Discharge Or Overflow Coverage**
     We will pay up to the Limit Of Liability shown in the Schedule for direct physical loss, not caused by the negligence or an "insured", to property covered under Section I caused by water, or waterborne material, which:

    1.       Originates from within the dwelling where you reside and backs up through sewers or drains; or

    2.       Overflows or is discharged from a:

          a.       Sump, sump pump; or

          b.       Related equipment;

even if such overflow or discharge results from mechanical breakdown or power failure.  This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown or power failure.

. . . .

C.    Section I – Exclusions

With respect to the coverage provided under this endorsement:

    1. The Water Exclusion is replaced by the following:

Water

This means water which backs up through sewers or drains, or overflows or is discharged from a sump, sump pump or related equipment, as a direct or indirect result of:

    a.       ***Flood, surface water***, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not drive by wind, including storm surge;

    b.       Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure, or

    c.       Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs C.1.a. and C.1.b. of this exclusion.

This exclusion applies regardless of whether any of the above, in Paragraphs C.1.a through C.1.c., is caused by an act of nature or is otherwise caused.

This exclusion applies to, but it not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

(*Id*. at PageID.161) (emphasis added).

**2.    Alleged Facts As To Floods At Plaintiffs' Properties**

All three of the named Plaintiffs rent or own homes in Wayne County, Michigan.   Each of the named Plaintiffs allege that on June 26, 2021, their insured property incurred damage from "flooding."  Plaintiffs' complaint acknowledges that on June 26, 2021, there was a "heavy

8

rainfall" in the area.  (*See* Compl. at ¶ 11).

Moreover, this Court may take judicial notice[1] that on June 26, 2021, Michigan's

Governor issued Executive Order 2021-7 declaring a state of emergency in Wayne County "due

to heavy rainfall resulting in widespread flooding, power outages, flooded roadways, stranded

motorists, flooding of homes, and displaced residents."  Michigan Executive Order No. 2021-8;

*see also* Michigan Executive Order No. 2021-7 (Explaining that "[b]eginning on June 25, 2021,

Southeast Michigan experienced heavy rainfall, which resulted in widespread flooding, power

outages, flooded roadways, stranded motorists, flooding of homes, and displaced residents.").

At all relevant times, Plaintiff Musaid Amir resided at a property on Kenilworth Street in

City of Dearborn, Michigan.  (Compl. at ¶ 10).   "During the late evening / early morning hours

of June 26, 2021," Amir "was at home when an acquaintance contacted him, reported that there

was a heavy rainfall, and suggesting that Plaintiff Amir check his basement to see if it was

experiencing any flooding."  (Compl. at ¶ 11).  Amir then "checked his basement and discovered

that it was in fact flooded."  (*Id*. at 12).  "The basement, which was finished with a kitchen and

bathroom, was destroyed as a result of the flooding with water rising to an estimated height of

approximately eighteen inches.  Because the bathroom door was closed at the time of the flood,

the bathroom filled with water to an estimated height of approximately three feet. The kitchen

filled with water to an estimated height of approximately two feet."  (*Id*. at 13).  Amir alleges

---

[1]Fed. R. Evid. 201*; see also Eye Ctrs. of Am., LLC v. Series Protected Cell 1*, __ F.
Supp.3d __, 2022 WL 304696 at *_ (M.D. Tenn. Feb. 1, 2022) (Explaining that a district court
may take judicial notice of executive orders without converting a motion into a summary
judgment motion and collecting cases regarding same); *Jones v. City of Cincinnati*, 521 F.3d
555, 562 (6th Cir. 2008) (A district court "may consider public records" without converting a
motion to dismiss or motion for judgment on the pleadings into a summary judgment motion).

that the "flooding destroyed the cabinets, walls, and doors throughout the basement as well as the floor in the bathroom." (*Id*. at 14).  Amir alleges that "[n]otwithstanding the flood insurance coverage, Defendant has refused to pay Plaintiff Amir's claim."  (*Id*. at 16).

Plaintiff Zead Rammouni resided at a property on Doxater Street in the City of Dearborn, Michigan.  (Compl. at ¶ 17).  " At approximately 12:30 a.m. on June 26, 2021, water began entering the basement of Plaintiff Rammouni's residence."  (Compl. at ¶ 18).   "The finished basement was destroyed as a result of the flooding with water rising to the height of the second stair up from the basement floor. All personalty had to be removed from the basement and the walls cut out at their base."  (*Id.* at ¶ 19).  Rammouni alleges that "[n]otwithstanding the flood insurance coverage, Defendant has refused to pay Plaintiff Rammouni's claim."  (*Id.* at ¶ 21).

Plaintiff Ali Yahya "was at all times relevant to this matter the owner of a rental property" on Crestmont Lane in Dearborn Heights, Michigan.  (Compl. at ¶ 22).  "At approximately 1:30 a.m. on June 26, 2021, Plaintiff Yahya observed posts on social media reporting that there was flooding in the area.  Plaintiff Yahya contacted the tenant and asked that she be on alert for flooding in the residence."  (Compl. at ¶¶ 23-24).  "Later that morning, the tenant contacted Plaintiff Yahya and reported that the residence had flooded during the early morning hours."  (*Id*. at ¶ 25).  "Plaintiff Yahya went to inspect the damage and observed a recent water mark on the basement walls between one to two feet above the floor.  Plaintiff Yahya further observed black debris on the walls."  (*Id*. at ¶ 26).  "The odor from the resultant smell was overbearing, so the tenant removed the carpeting from the basement. During the course of the next few days that followed, Plaintiff Yahya and/or the tenant applied Clorox bleach and mildew spray to the water-damaged basement."  (*Id*. at ¶ 27).  Yahya alleges that

"[n]otwithstanding the flood insurance coverage, Defendant has refused to pay Plaintiff Yahya's claim." (*Id.* at ¶ 29).

## ANALYSIS

### I.      Fraud, Silent Fraud, And Innocent Misrepresentation Claims

Defendant contends that it is entitled to dismissal of Plaintiffs' extra-contractual claims of fraud, silent fraud, and innocent misrepresentation because those claims are not pled with particularity, as is required under Fed. R. Civ. P. 9(b). The Court agrees.

It is well established that "[f]raud and misrepresentation claim are held to a higher pleading standard under Rule 9(b)." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co.*, LLC, 677 F. App'x 979, 982 (6th Cir. 2017).

"Rule 9(b) requires parties to 'state with particularity the circumstances constituting fraud or mistake' for fraud claims." *Smith,* 988 F.3d at *883.* "To satisfy Rule 9(b), 'the plaintiff must allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury.'" *Smith*, *supra* (citations omitted); *see also William Beaumont Hosp. Sys.*, 677 F. App'x at 982-83 (Explaining that Rule 9(b)'s particularity requirement has been interpreted by the Sixth Circuit "to mean a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'")

Here, Plaintiffs have failed to allege their fraud counts with that required particularity. For example, Plaintiffs assert a fraud count, that alleges that "Defendant acting through its agents made material representations regarding the nature and scope of its insurance coverage," that

they allege "were false."  (Compl. at 8).   But the complaint fails to include any factual allegations as to the time, place, or content of any alleged misrepresentations.  The fraud count must therefore be dismissed.

Plaintiffs' innocent misrepresentation count similarly alleges that "Defendant acting through its agents made material representations in transactions" with Plaintiffs that "were false," but Plaintiffs' complaint fails to include any supporting factual allegations as to the time, place, or content of any such representations.  As such, this count shall also be dismissed.

Plaintiffs' remaining fraud claim is a "silent fraud" claim under Michigan law.  "[S]ilent fraud, also called fraudulent concealment," has long been recognized under Michigan law. *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013).   "But to state a claim for the tort of silent fraud, a plaintiff must allege more than non-disclosure; a plaintiff must establish that the defendant had 'a legal duty to make a disclosure.'" *Id*. (citations omitted).

"Such a legal duty to make a disclosure arises 'most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information.'" *MacDonald, supra*, at 666 (citations omitted).

Defendant's motion asserts that Plaintiffs' silent fraud claims fail because, among other things, they have not alleged facts to show that Defendant had a legal duty to make a disclosure. Defendant notes that "Plaintiffs fail to allege that they asked an AmGuard representative if their Homeowner's Policies provide coverage for a flood event" and "also fail to identify an AmGuard representative who allegedly withheld the pertinent information – that is, the Homeowners Policies do not provide coverage for flood damage."  (Def.'s Br. at 16).

12

In response to Defendant's motion, Plaintiffs fail to address the challenges made to their silent fraud claims.

Moreover, this Court agrees with Defendant that the claim fails because Plaintiffs do not plead facts that would support a duty to disclose.  Plaintiffs' complaint does not allege that they ever asked one of Defendant's agents if the insurance policies include flood coverage, so as to create a duty for Defendant to disclose the truth.  The lack of factual allegations as to such an inquiry by Plaintiffs "dooms the silent fraud claim" because, absent such an inquiry, Defendant had no duty to disclose.  *MacDonald*, 724 F.3d at 666; *see also Smith v. Bank of America*, 485 F. App'x 749, 753-54 (6th Cir. 2012).

Accordingly, the Court dismisses Plaintiffs' fraud, silent fraud, and innocent misrepresentation claims.

## II.    Breach Of Contract Claims

Defendant contends that it is entitled to judgment on the pleadings as to Plaintiffs' breach of contract claims.

In response to Defendant's challenge to the breach of contract claims, Plaintiffs make several arguments in their response brief that are non-starters and are rejected by this Court.

### A.    Defendants' Alleged "Failed To Provide Requisite Documentation"

Plaintiffs' response brief asserts that, "[a]s a threshold matter, Defendant has failed to support its motion with the documentation required for a proper analysis" of the breach of contract claims.  (Pls' Br. at 10).  Plaintiffs then reference the policy applications, declarations pages, and the policies themselves – and then suggest that Defendant has failed to provide the contract documents to the Court and to Plaintiffs' counsel.

13

But Defendant's motion attached copies of the insurance contracts at issue as exhibits to the motion and Plaintiffs did so too (ie., attached copies of the insurance policies, including the declarations pages, as exhibits to their response brief).  As such, this argument goes nowhere.

### B.      Acceptance Of Plaintiffs' Allegations As True

With respect to Plaintiffs' breach of contract claims, Plaintiffs appear to make two arguments, asserting:

> Regarding Plaintiff's breach of express contract claim, Plaintiffs have expressly alleged that (1) "Contracts existed between Plaintiffs and Defendant whereby Defendant agreed to provide Plaintiffs coverage for flood damage to their respective properties," (2) "Defendant breached said contracts by refusing to provide Plaintiffs coverage for flood damage to their respective properties," and (3) "Defendant's breach of said contracts resulted in damages to Plaintiffs' respective properties." (ECF No. 1-2, PageID.23.) Under Michigan law, to prevail on a claim for breach of contract, a Plaintiff need allege only "that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 100, 878 N.W.2d 816, 829 (2016). In the current procedural context, these allegations must be accepted as true, *Rawe*, 462 F.3d at 526, and accepting these allegations as true, Defendant has failed to establish that it is "'clearly entitled to judgment'" regarding Plaintiff's breach of express contract claim. Stated alternatively, Defendant's motion must be denied where Plaintiff's Complaint clearly contains "'direct or inferential allegations respecting all the material elements under some viable legal theory.'" *Barany-Snyder*, 539 F.3d at 332.

(Pls.' Br. at 12).

To the extent that Plaintiffs argue that all they need to do in order to plead a breach of contract claim is to allege that there was a contract, the other party breached it, and that the breach resulted in damages, they are mistaken.  That does not satisfy the applicable *Twombly-Iqbal* standard.

Plaintiffs also appear to argue that they should be allowed to proceed with their breach of contract claim against Defendant because they allege that "Contracts existed between Plaintiffs

and Defendant whereby Defendant agreed to provide Plaintiffs coverage for flood damage to their respective properties," and Defendant breached those contracts "by refusing to provide Plaintiffs coverage for flood damage" to their properties and those factual allegations must be accepted as true.  (Pls.' Br. at 12).  In other words, Plaintiffs appear to argue that they can proceed with this claim based on their factual allegations, because they allege that the insurance policies cover flood damage, regardless of whether the contracts at issue actually include such coverage.

Plaintiffs are mistaken.  Because the insurance contracts are central to Plaintiffs' breach of contract claims, and referenced in the complaint, this Court can consider those contracts in evaluating the pending Motion for Judgment on the Pleadings.  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss [or motion for judgment on the pleadings] simply by failing to attach a dispositive document upon which it relied."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  And although a court must generally accept all well-pled facts as true, if a document referenced in the complaint (here, the insurance contract) contradicts the factual allegations in the complaint, the document "trumps the allegations."  *Williams v. CitiMortage, Inc*., 498 F. App'x 532, 536 (6th Cir. 2012); *see also Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017); *Land and Buildings Invest. Mgmt., LLC v. Taubman Ctrs, Inc*., 751 F. App'x 612, 617 (6th Cir. 2018) ("Because L&B's breach-of-contract claim is belied by the clear terms of the very contract on which it is based, L&B has not stated a plausible claim."); *Creelgroup, Inc. v. NGS American, Inc*., 518 F. App'x 343, 347 (6th Cir. 2013) (Explaining that a plaintiff "cannot survive a motion to dismiss, even if it has pleaded the existence of a contract, if the written instrument plainly contradicts the

pleadings because 'when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'").

Accordingly, this argument is also rejected and the Court proceeds to evaluate Defendant's challenge to the breach of contract count.

**C.    Defendant's Challenge To Breach Of Contract Count, Based On Insurance Policy Provisions**

The complaint alleges that the policies were issued to Plaintiffs, Michigan citizens, covering properties located in Michigan, and the parties agree that Michigan law governs.

"Under Michigan law, when interpreting an insurance contract, courts apply the same contract construction principles that govern any other type of contract. *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398 (6th Cir. 2022) (citing *Royal Prop. Grp., LLC v. Prime Ins. Syndicate, Inc.,* 267 Mich.App. 708, 706 N.W.2d 426, 432 (2005)). "The primary goal in the construction or interpretation of a contract is to honor the intent of the parties." *Id*. (quotation marks, alteration, and citations omitted). The best way to determine the parties' intent is to examine the ordinary and plain meaning of the language of the contract when read as a whole. *Id.*

"Michigan courts engage in a two-step analysis when determining coverage under an insurance policy: (1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage*." K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018). Coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. *Fresard v. Michigan Millers Mut. Ins. Co.*, 414 Mich. 686, 695 (1982). Clear and specific exclusions must be given effect. *Auto Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567 (1992).

Defendant contends that it is entitled to judgment on the pleadings as to Plaintiffs' breach of contract claims because the complaint alleges that the water damage at issue was caused by flooding, and the plain language of the Water Exclusion in the insurance policies precludes coverage for loss caused directly or indirectly by water, including floods. Its motion asserts:

> Plaintiffs readily, and repeatedly, admit that they are seeking insurance coverage under the Homeowners Policies for "flooding" that took place on June 26, 2021 as a result of heavy rainfall. (*See, e.g.*, ECF No. 1-2 at ¶¶ 12, 13, 14, 19, 25). That rainfall caused flooding of the basements of the Plaintiffs' residences. Plaintiffs also repeatedly, and mistakenly, claim that the Homeowners Policies are "flood insurance." (*See, e.g.*, ECF No. 1-2 at ¶¶ 15, 16, 20, 21, 28, 29, 31, 33, 34, 53, 55, 56, 57, 61, 65). That is simply not the case. The policies at issue are traditional homeowners policies that plainly exclude, in two separate exclusions, loss caused directly or indirectly by "Water." And "Water" is defined to include "flood." As a result, AmGUARD is entitled to judgment in its favor on the pleadings under Plaintiffs' breach of contract claims (ECF No. 1-2 at Count IV).

(Def.'s Br. at 5).

In response, Plaintiffs take a strange position – somehow suggesting that they have not asserted a breach of contract claim based upon flooding of their basements that occurred after a heavy rainfall:

> Seizing upon colloquial language employed in Plaintiffs' Complaint, Defendants argue, disingenuously, that Plaintiffs "admit that they are seeking insurance coverage under the Homeowners Policies for 'flooding' that took place on June 26, 2021 as a result of heavy rainfall." (ECF No. 9, PageID.91.) Having erected the strawman "flood insurance" argument, Defendant proceeds to argue that "[t]he policies at issue are traditional homeowners policies that plainly exclude, in two separate exclusions, loss caused directly or indirectly by 'Water.'" (ECF No. 9, PageID.91.) Defendant then proceeds to conclusion that "[a]s a result, AmGUARD is entitled to judgment in its favor on the pleadings under Plaintiffs' breach of contract claims ...." *Id.*

(Pls.' Br. at 8-9).

Defendant did not erect a "strawman flood-insurance argument."  That is the breach of contract claim pleaded by Plaintiffs.  Plaintiffs' Complaint *expressly alleges* that the named

17

Plaintiffs "purchased *flood insurance coverage* from Defendant," that they experienced "*flooding*" of their basements on June 26, 2021, and that Defendant denied their insurance claims "[n]otwithstanding *the flood insurance coverage*" they purchased from Defendant.  (*See, eg.*, Compl. at ¶¶ 10-16).   But the actual insurance policies at issue do not provide flood insurance coverage.  (*See* Pls.' Br. at 1) (Acknowledging that because "the insurance policies excluded from coverage water-related losses from flooding" the Plaintiffs, "relying upon the Limited Water Back-Up and Sump Discharge or Overflow Coverage Endorsement sold to them by Defendant, made claims seeking coverage for water-related damage.").

 Because Plaintiffs' breach of contract claims are belied by the terms of the actual insurance contracts on which they are based, Plaintiffs' have not asserted plausible breach of contract claims against Defendant.  *See Land and Bldgs. Inv. Mgmt., LLC v. Taubman Ctrs, Inc.,* 751 F. App'x at 617 ("Because L&B's breach-of-contract claim is belied by the clear terms of the very contract on which it is based, L&B has not stated a plausible claim.").

Moreover, Defendant has established that the exclusionary provisions bar coverage for the flooding of Plaintiffs' basements.

Plaintiffs response brief indicates that Plaintiffs contend that their insurance claims are covered under the "Limited Water Back-Up and Sump Pump Discharge or Overflow Coverage Endorsement."  (Pls.' Br. at 1-2).

In determining whether Plaintiffs have plausibly alleged such a claim, this Court is permitted to examine what Plaintiffs did not allege.  That is because:

> In order to satisfy the plausibility requirement that governs Rule 12(c) motions, a complaint must plead "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (emphasis added). It is not sufficient to allege facts that are "merely consistent with" liability while eliding

18

other, more problematic factual issues that are nevertheless essential to the claim. *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). A complaint will not survive a motion under Rule 12(b)(6) or 12(c) unless the plaintiff has pleaded "each element of his claim with sufficient detail." *York v. Lucas Cty.*, Ohio, No. 3:13CV1335, 2014 WL 496937, at *1 (N.D. Ohio Feb. 6, 2014) (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). While the court is bound to accept the plaintiff's assertions of fact, the court is not bound to ignore the *plaintiff's omissions*.

*Eye Ctrs. of Am., LLC, supra*, at *6 (emphasis added).

Here, Plaintiffs' complaint does not include any factual allegations that would tend to show that their claims are covered under the above endorsement.  As Defendant notes in its response brief, the complaint does not allege that the water or waterborne material originated from within their dwellings, or that it backed up through sewers or drains or overflowed or was discharge from a sump, a sump pump, or related equipment.  (Def.'s Br. at 7).

This Court therefore finds that Plaintiffs have failed to plausibly allege a breach of contract claim against Defendants.

## III.    Promissory Estoppel Claims

A promissory estoppel claim under Michigan law requires: 1) a promise; 2)  that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promise; 3) which in fact produced reliance or forbearance of that nature; 4) in circumstances such that the promise must be enforced if injustice is to be avoided.  *United States ex rel. Guzall v. City of Romulus, Mich*., 743 F. App'x 574, 582 (6th Cir. 2018) (citations omitted).  "Michigan precedent emphasizes that the promise must be clear and definite and any subsequent reliance must be reasonable." *Id.*

"[A]lternative pleading of an implied contract claim" such as promissory estoppel "is only allowed in a contract setting where a party doubts the existence of a contract."  *Advanced*

19

*Plastics Corp. v. White Consol. Indus., Inc.*, 828 F.Supp. 484, 491 (E.D. Mich. 1993) (citing

*Campbell v. Troy*, 42 Mich.App. 534, 537 (1972)); *see also Terry Barr Sales Agency, Inc. v. All-*

*Lock Co., Inc*., 96 F.3d 174, 181 (6th Cir. 1996) ("Where the parties have an enforceable contract

and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel

and unjust enrichment.").

      Here, Defendant contends that it is entitled to judgment on the pleadings as to Plaintiffs'

promissory estoppel claims because: 1) it is undisputed that valid, enforceable insurance

contracts exist between the parties; and 2) and any alleged oral promises would contradict the

clear, binding language of those policies.  As to that second part of that challenge, Defendant's

motion states that Plaintiffs' promissory estoppel claims fail because "the clear language of the

Homeowners Policies precludes coverage for Plaintiffs' claimed damages, which Policies,

including the Water Exclusions, Plaintiffs are presumed to have read.  *Zaremba Equip*., 761

N.W.2d at 166 (recognizing that 'no action for promissory estoppel may lie when an oral

promise expressly contradicts the language of a binding contract.'); *Cooper*, 751 N.W.2d at 451

('One is presumed to have read the terms of his or her insurance policy')."  (Def.'s Br. at 12).


      In responding to Defendant's motion, Plaintiffs ignore the second part of this challenge

and their response to the first part of the challenge fails to save this claim.

      Plaintiffs' complaint asserts a breach of contract claim against Defendants based upon the

insurance contracts. Nevertheless, in response to Defendant's motion, Plaintiffs take the position

that their contracts may not be valid and enforceable because of the doctrine of illusory

coverage.  (Pls.' Br. at 19) ("Defendant's argument is wholly predicated upon the assumption

20

Case 2:21-cv-12457-SFC-DRG   ECF No. 16, PageID.643   Filed 06/08/22   Page 21 of 22

that a valid, enforceable contract exists.  While the parties did enter into a written contract for insurance, that fact alone is not dispositive with regards to the question whether the contract is in fact legally valid and enforceable," and then referring to the doctrine of illusory coverage.).

"An 'illusory contract' is defined as an agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation.  The insubstantial promise renders the agreement unenforceable." *Cincinnati Ins. Co. v. Hall*, 2013 WL 3107640 at * 5 (Mich. App. 2013).  "A similar, more specific concept exists in the realm of insurance. The 'doctrine of illusory coverage' encompasses a rule requiring an insurance policy to be interpreted so that it is not merely a delusion to the insured."  *Id*.  An insurance policy may not be stricken as illusory "if there is any manner in which the policy could be interpreted to provide coverage." *Id.; see also Lattimore-Wiegan v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5592891 at *3 (E.D. Mich. 2013) ("As long as there is 'any manner in which the policy could be interpreted to provide coverage,' the challenged policy provision is not illusory.").

Under its plain language, the endorsement at issue here provides coverage in several circumstances – such as when there is an overflow or discharge of water into a property due to a sump pump's mechanical failure or due to a power outage that prevented it from operating properly.  Accordingly, the endorsement is not illusory.

Moreover, in order to assert a viable promissory estoppel claim, the "promise must be definite and clear, and the reliance on it must be reasonable." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41 (2008).  "In determining whether a requisite promise existed," the Court must "objectively examine the words and actions" surrounding the transaction in question.  *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 687 (1999).

21

Michigan Courts have "held that no action for promissory estoppel may lie when an oral promise expressly contradicts the language of a binding contract." *Zaremba, supra.*

Here, Plaintiffs' promissory estoppel claim is based on the allegation that "Defendant promised to provide Plaintiffs coverage for flood damage to their respective properties." (Compl. at ¶ 65). The complaint does not include any factual allegations as to who made the alleged promises to the three named Plaintiffs on behalf of Defendant, or the words used to make those alleged promises. Assuming *arguendo* that some agent or employee of Defendant told Plaintiffs that the insurance contracts provide coverage for flood damage, the circumstances surrounding such a statement would preclude an objective finding of a clear and definite promise of such coverage, and reasonable reliance on same, because the insurance policies expressly contradict such a statement. *Zaremba, supra, Novak, supra.*

Accordingly, Plaintiffs have not plausibly alleged a promissory estoppel claim under Michigan law.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Judgment on the Pleadings is GRANTED and this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: June 8, 2022

22